NO. 07-06-0329-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JULY 24, 2007

_____

DEAN EUDELL HOHNSTEIN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 51,407-B; HONORABLE JOHN BOARD, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a plea of not guilty, Appellant, Dean Eudell Hohnstein, was convicted by a jury of possession of methamphetamine, enhanced, and punishment was assessed at ninety-nine years. Presenting two issues, Appellant maintains (1) the evidence was factually insufficient to support his conviction, and (2) the trial court erred in allowing

evidence of extraneous offenses which were part of the context of his arrest in that they were not relevant to the charged offense. We affirm.

At approximately 4:00 a.m. on March 12, 2005, Appellant was involved in a non-injury motor vehicle accident in Potter County. Trooper Russell Davis of the Texas Department of Public Safety was dispatched to investigate the accident. Davis determined that Appellant was the sole occupant of a recreational vehicle (RV) towing a van which was in turn carrying a motorcycle on a grate on the back bumper. Upon further investigation, Trooper Davis determined that a homemade tow bar had broken, causing the van to come loose from the RV and cross several lanes of traffic and a median before coming to rest in a bar ditch on the opposite side of the road.

After Trooper Davis determined the cause of the crash, he cleared Michael Howard, the tow truck driver who was dispatched to the scene, to tow the van from the ditch. Howard, who was also a sixteen-year veteran police officer with drug interdiction experience, positioned his tow truck in a manner that caused his headlights to shine toward the median, where he noticed a red nylon cooler bag laying in a drainage culvert. According to Howard, Appellant kept glancing toward the median while stuttering and stammering. Being concerned about the identity of the cooler and Appellant's nervous conduct, Howard advised Trooper Davis of his suspicions. Davis testified that he then recovered the bag from atop of the metal pipes forming the drainage culvert and found the bag to be remarkably free of debris given its location.

2

The bag, which had no identification, consisted of two separate zippered compartments–a small upper compartment and a larger lower compartment. Trooper Davis opened the lower compartment which revealed a secondary one gallon plastic bag containing a green leafy substance which, given his experience, looked like marihuana. When Davis lifted the plastic bag from the cooler, he noticed pink/purple ballpoint ink on the front of it providing a model and serial number for a twenty-inch Sansui LCD television with a date of "9-23-04." Trooper Davis believed this information to be significant because he had just moments earlier admired a twenty-inch Sansui LCD television in Appellant's RV. Davis had stepped inside the RV, with the Appellant's permission, to retrieve the tow bar which he believed was relevant to his investigation concerning the cause of the crash, and had even commented to Appellant that he and his wife had been shopping for such a TV. According to Davis, due to the proximity of the cooler bag and the handwritten information regarding the TV, he changed the nature of his investigation from a crash to a criminal investigation.

Davis then arrested Appellant and called for a K-9 unit to come to the scene. The K-9 dog alerted on the driver's side door and traced the odor to a small box on the side of the RV. No narcotics were found in the RV; however, an inventory search did reveal drug paraphernalia in the form of a marihuana pipe, a marihuana cigarette, four butane torch lighters, a motorcycle lighter, a pair of forceps with burnt tips, a long bladed knife with a burnt tip, tweezers with burnt tips, a black rubber bulb, a hollow plastic tube, and butane

3

fuel. A search of Appellant incident to his arrest turned up $3,051 in cash, a cell phone, and Zigzag cigarette rolling papers.

All the evidence, including the red cooler bag, was submitted to the county crime lab for processing. The small upper compartment of the red cooler bag was not opened until that time. The deputy technician discovered a white crystalline substance weighing approximately 2.08 grams.[1] He also found a leather case containing scales, syringes, small baggies, and a metal spoon. Fingerprint analysis of the evidence proved inconclusive.

The green leafy substance and the white crystalline substance found in the red cooler bag were submitted to the Texas Department of Public Safety lab for analysis. The Department's chemist testified that the green leafy substance was marihuana which weighed 13.91 ounces and that the crystalline substance was methamphetamine containing adulterants and dilutants weighing 2.09 grams. Appellant was indicted for possession of methamphetamine in an amount of one gram or more but less than four.

Sufficiency of the Evidence

By his first issue, Appellant contends the evidence was factually insufficient to support his conviction. We disagree. When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484

---

[1]The Texas Department of Public Safety's chemist testified that the substance weighed 2.09 grams.

(Tex.Crim.App. 2004), *overruled in part by Watson v. State*, 204 S.W.3d 404, 415-17 (Tex.Crim.App. 2006). We cannot reverse a conviction unless we find some objective basis in the record that demonstrates that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417. In other words, we cannot conclude that Appellant's conviction is "clearly wrong" or "manifestly unjust" simply because we might disagree with the jury's verdict. *Id.*; *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).

The State was required to prove that Appellant exercised actual care, custody, control, or management, of the methamphetamine and that he knew the substance was methamphetamine. *See* Tex. Health & Safety Code Ann. §§ 481.002(38) & 481.115(c) (Vernon 2003 & Supp. 2006). By either direct or circumstantial evidence, the State must establish, to the requisite level of confidence, that the accused's connection with the controlled substance was more than just fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005). Presence or proximity, when combined with other evidence, either direct or circumstantial (*e.g.*, "links"), may be sufficient to establish possession. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).[2]

Links include, but are not limited to: (1) Appellant's presence when the contraband was found; (2) whether the contraband was in plain view; (3) Appellant's proximity to and the accessibility of the contraband; (4) whether Appellant was under the influence of narcotics

---

[2]The Court of Criminal Appeals has recently recognized that "affirmative" adds nothing to the plain meaning of "link" and now uses only the word "link" to judge evidence of possession. *Evans v. State*, 202 S.W.3d 158, 161 n.9 (Tex.Crim.App. 2006).

5

when arrested; (5) whether Appellant possessed other contraband when arrested; (6) whether Appellant made incriminating statements when arrested; (7) whether Appellant attempted to flee; (8) whether Appellant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether Appellant owned or had the right to possess the place where the drugs were found; (12) whether the place the drugs were found was enclosed; (13) the amount of contraband found; (14) whether Appellant was the driver of the automobile in which the contraband was found; and (15) whether Appellant possessed a large amount of cash. *See Taylor v. State*, 106 S.W.3d 827, 831 (Tex.App.–Dallas 2003, no pet.)*; Trejo v. State*, 766 S.W.2d 381, 384 (Tex.App.–Austin 1989, no pet.). It is the logical force of the circumstantial evidence, not the number of links, that must support a jury's verdict. *Evans*, 202 S.W.3d at 166.

The initial investigatory check had shown that the RV was registered to someone other than Appellant, however, it was later determined that Appellant had purchased the vehicle a month earlier. The evidence established that he was not intoxicated nor did he have any controlled substances on his person at the time of his arrest. However, the RV was in close proximity to the median where the red cooler was found. Additionally, the cooler, although resting on a drainage culvert where trash collects against the grate, was free from debris.

According to the evidence, Appellant did not make any incriminating statements; in fact, he denied ownership of the cooler when questioned by Trooper Davis. Howard, the

6

former police officer turned tow truck driver, and Davis both testified that Appellant was nervous at first contact. Trooper Davis added that Appellant's nervousness was excessive given the circumstances of the incident. He further testified that Appellant remained nervous with periods of aggression.

Trooper Davis also testified that it was highly unlikely that the Sansui television in Appellant's RV and the information corresponding to that TV written on the plastic bag containing marihuana was random. On cross-examination, he testified that he had researched television brands while shopping for an LCD television and discovered that Sansui imported only 147,000 units compared to Samsung's 50 million units.

Although the K-9 unit alerted on the RV, no narcotics were found inside. The deputy, however, testified that sometimes it is possible for a dog to alert to an odor even after the narcotics that caused the odor are removed.

According to Trooper Davis, the scales, metal spoon, syringes, plastic baggies, and other paraphernalia were all indicative of narcotics use. Regarding traveling with large amounts of cash, he testified during cross-examination that it is not necessarily indicative of narcotics; however, upon redirect examination, he explained that large amounts of cash did pose a security risk and that traveling with that kind of cash was at least consistent with buying and selling narcotics. Given the logical force of the totality of this evidence, albeit circumstantial, we cannot conclude that Appellant's conviction is "clearly wrong" or "manifestly unjust." Issue one is overruled.

## Extraneous Offenses

By his second issue, Appellant maintains the trial court erred in allowing evidence of extraneous offenses which were part of the context of his arrest in that they were not relevant to the charged offense. Although not stated in his issue, Appellant argues that the extraneous evidence he complains of was introduced during the State's case-in-chief without the State providing reasonable notice as required by Rule 404(b) of the Texas Rules of Evidence. The State argues that Appellant waived this issue.

Upon Appellant's request, the State provided notice of its intent to introduce the following extraneous offense:

> [o]n or about September 5, 2005, in Tarrant County, Texas, the defendant intentionally, knowingly, or recklessly carried on or about his person a handgun, illegal knife, or club.

As Appellant points out, the State did not introduce that offense at trial; instead, the State offered, and the trial court admitted the various items of drug paraphernalia located during the inventory search. Appellant further argues that this extraneous evidence was not admissible as same transaction contextual evidence. *See Wyatt v. State*, 23 S.W.3d 18, 25 (Tex.Crim.App. 2000).

At every instance that extraneous evidence was offered, defense counsel lodged objections based on Rules 401 and 403 of the Texas Rules of Evidence, which the trial court consistently overruled. At no time, however, did defense counsel urge an objection

8

on the State's failure to provide notice under Rule 404(b). We agree with the State that a trial objection regarding extraneous offenses that does not comport with the complaint raised on appeal does not preserve the contention for appellate review. *See Medina v. State*, 7 S.W.3d 633, 643 (Tex. 1999); *Knox v. State*, 934 S.W.2d 678, 687 (Tex.Crim.App. 1996).

Appellant did, however, preserve his complaint under Rule 403 of the Texas Rules of Evidence which provides, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." We review the trial court's ruling on a Rule 403 objection for abuse of discretion. *See State v. Melcher*, 153 S.W.3d 435, 439 (Tex. 2005). The trial court does not abuse its discretion unless its ruling lies outside the zone of reasonable disagreement. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991) (op. on reh'g).

Rule 403 does not exclude all prejudicial evidence, only that which is "unfairly" prejudicial. *Melcher*, 153 S.W.3d at 440. Evidence is unfairly prejudicial under Rule 403 when it has a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Id.*

In determining a Rule 403 objection, the trial court balances several factors, including, but not limited to: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Id.* Outside the jury's presence,

the trial court heard testimony from Trooper Davis regarding the extraneous evidence found in Appellant's RV. Following defense counsel's Rule 403 objection, the trial court ruled:

> after performing the weighing test, I do find that the prejudicial effect does not outweigh the probative value. I think there's really two reasons to allow the admission of the evidence. Number one, I think it's part and parcel of the same criminal conduct, but also with respect to being an identifier, I think it's very relevant to – to the – and a connection, if the jury chooses to find that, between the – the contraband and the RV. So I'll overrule the objection.

The evidence in question tended to prove an elemental fact of consequence, *i.e.*, linking Appellant to possession of methamphetamine. Additionally, based upon the considerations set forth above, we find that the danger of unfair prejudice did not outweigh its probative value. We conclude the trial court did not abuse its discretion in admitting the extraneous evidence for the jury to consider in determining whether Appellant was guilty of the charged offense. Issue two is overruled.

Accordingly, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.

10